Floyd W. Bybee, #012651
**LAW OFFICE OF**
**FLOYD W. BYBEE, PLLC**
4445 E. Holmes Ave., Suite 107
Mesa, AZ 85206-3398
Office: (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| **Roger A. Lee,** an individual; | No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| **Unifund CCR Partners, G.P.,** a New York partnership; **Trans Union LLC,** a Delaware corporation | (Jury Trial Demanded) |
| Defendants. | |

Plaintiff, Roger A. Lee, by and through counsel undersigned and in good faith, alleges as follows:

## I. PRELIMINARY STATEMENT

1. Plaintiff brings this action for damages based upon Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§1692 *et seq*. (hereinafter "FDCPA"), and/or the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et*

1    *seq*.  Plaintiff seeks an award of statutory damages, actual damages, punitive
2    damages, costs and attorney's fees.

## II.  STATUTORY STRUCTURE OF FDCPA.

4   2.   Congress passed the FDCPA to eliminate abusive debt collection practices by
5        debt collectors, to insure that those debt collectors who refrain from using abusive
6        debt collection practices are not competitively disadvantaged, and to promote
7        consistent state action to protect consumers against debt collection abuses.
8        FDCPA § 1692.
9   3.   The FDCPA is designed to protect consumers who have been victimized by
10       unscrupulous debt collectors regardless of whether a valid debt exists.  Baker v.
11       G.C. Services Corp., 677 F.2d 775, 777 (9th Cir. 1982).
12  4.   The FDCPA defines a "consumer" as any natural person obligated or allegedly
13       obligated to pay any debt.  FDCPA § 1692a(3).
14  5.   The FDCPA defines "debt" as any obligation or alleged obligation of a consumer
15       to pay money arising out of a transaction in which the money, property, insurance,
16       or services which are the subject or the transaction are primarily for personal,
17       family, or household purposes.  FDCPA § 1692a(5).
18  6.   The FDCPA defines "debt collector' as  any person who uses any instrumentality
19       of interstate commerce or the mails in any business the principal purpose of which
20       is the collection  of any debts, or who regularly collects or attempts to collect,
21       directly or indirectly, debts owed or due or asserted to be owed or due to another.
22       FDCPA § 1692a(6).
23  7.   Any debt collector who fails to comply with the provisions of the FDCPA is liable
24       for any actual damage sustained; statutory damages up to $1,000; attorney's fees
25       as determined by the Court and costs of the action. FDCPA § 1692k.

### III. STATUTORY STRUCTURE OF FCRA.

8. When Congress enacted the FCRA in 1970, it recognized that "Unfair credit methods undermine the public confidence which is essential to the continued functioning of the banking system."  FCRA § 1681(a)(1).

9. Congress crafted the FCRA to protect consumers from the transmission of inaccurate information about them.  <u>Kates v. Croker National Bank</u>, 776 F.2d 1396, 1397 (9th Cir. 1985).

10. In 1996 Congress amended the FCRA imposing upon furnishers of information, such as the defendant herein, detailed and specific responsibilities, including those in FCRA § 1681s-2(b).  The furnisher has its own obligation to conduct a reasonable investigation of Plaintiff's disputes.  <u>Johnson v. MBNA</u>, 357 F.3d. 426 (4th Cir. 2004);  <u>Cushman v. Trans Union Corporation</u>, 115 F.3d 220, 227 (3d Cir. 1997).

11. Any furnisher which fails to conduct a reasonable investigation under FCRA § 1681s-2(b), is liable to the consumer for any actual damages sustained, and if the failure is willful, then actual damages sustained or statutory damages of not less than $100 and not more than $1,000, and punitive damages, together with attorney's fees and costs of the action.  FCRA §§ 1681n and *o*.

### IV. JURISDICTION

12. Jurisdiction of this Court, over this action and the parties herein, arises under 15 U.S.C. §1692k(d) (FDCPA), 15 U.S.C. § 1681p (FCRA), and 28 U.S.C. § 1331.  Venue lies in the Tucson of the District of Arizona as Plaintiff's claims arose from acts of the Defendants perpetrated therein.

### V. PARTIES

13. Plaintiff is a citizen of Cochise County, Arizona.

14. Plaintiff is allegedly obligated to pay a consumer debt and is a "consumer" as defined by FDCPA § 1692a(3) and FCRA § 1681a(c).
15. Defendant Unifund CCR Partners, G.P. ("Unifund") is a New York partnership.
16. Unifund is licensed as a collection agency by the Arizona Department of Financial Institutions, license number 0907503.
17. Unifund regularly collects or attempts to collect debts owed or asserted to be owed or due another.
18. Unifund regularly collects or attempts to collect debts which it has purchased after default.
19. Unifund is a "debt collector" as defined by FDCPA § 1692a(6).
20. Unifund is a "person" as defined by FCRA § 1681a(b).
21. Unifund is a "furnisher" of information as contemplated by FCRA § 1681s-2(a) & (b), who regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.
22. Defendant Trans Union LLC ("Trans Union") is a Delaware corporation conducting business within the state of Arizona.
23. Trans Union is both a "person" and a "consumer reporting agency" as those terms are defined and contemplated under the FCRA.

## VI.  FACTUAL ALLEGATIONS

24. In or about 1983, Plaintiff opened a credit card account with First USA Bank.
25. The First USA account was used primarily for personal, family or household purposes.
26. In 2000, Plaintiff used his First USA credit card to pay for a rental car which put him slightly over his credit limit of $3,000.

27. First USA added over limit fees and late fees which accrued faster than Plaintiff could pay, and he subsequently defaulted on the First USA account.

28. Plaintiff's defaulted on the First USA account no later than January 1999.

29. Upon information and belief, sometime thereafter, First USA sold or assigned the account to Unifund.

30. Subsequent to acquiring the First USA debt, Unifund reported the account to Trans Union, one of the three national consumer reporting agencies.

31. In May 2008, Plaintiff obtained a copy of his Trans Union credit report which showed that Unifund was reporting the First USA debt as a current collection account with $20,398 owed.

32. On or about May 20, 2008, Plaintiff sent Trans Union a letter disputing Unifund's reporting of the First USA debt to his credit bureau, and requested that the tradeline be removed.

33. Plaintiff included in his dispute to Trans Union a copy of a page from his Experian credit report showing the delinquency dates that First USA had reported to Experian in May 2002.

34. Upon information and belief, Trans Union contacted Unifund concerning Plaintiff's dispute of its tradeline.

35. Upon information and belief, Trans Union did not send a copy of Plaintiff's Experian credit report with its notice of dispute to Unifund.

36. Upon information and belief, Unifund verified to Trans Union that its tradeline was reported accurately.

37. Plaintiff received a report back from Trans Union dated May 31, 2008 stating that the Unifund account, and the information it was reporting, had been verified by Unifund and Trans Union.

38. The Unifund information sent by Trans Union showed that Unifund had now updated the report to show a balance owing of $21,004, and that the account would continue to be reported until August 2009.
39. Plaintiff subsequently disputed the Unifund account again with Trans Union in or about September 2008.
40. Upon information and belief, Trans Union contacted Unifund concerning Plaintiff's dispute of its tradeline.
41. Upon information and belief, Unifund verified to Trans Union that its tradeline was reported accurately.
42. Plaintiff received a credit report back from Trans Union showing Unifund had verified the account in September 2008, and that $22,326 was now owing on the account.
43. Upon information and belief, Unifund has reported a false date for the first date of delinquency to Trans Union.
44. When communicating with Trans Union, Unifund has failed to communicate that the debt is disputed as required by the FDCPA.
45. Unifund's actions as outlined above were taken as part of its persistent and routine practice of debt collection.
46. Defendants have continued to report inaccurate, derogatory and improper information and failed to retract, delete and/or suppress inaccurate, derogatory and improper information about the Plaintiff, as described more fully herein.
47. As a result and proximate cause of Defendants' actions, Plaintiff has suffered actual damages, and continues to suffer damages.

## VII.  CAUSES OF ACTION

### a.  Fair Debt Collection Practices Act

48. Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs.

49. Unifund's violations of the FDCPA include, but are not necessarily limited to, 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(8), and 1692e(10).

50. As a direct result and proximate cause of Unifund's violations of the FDCPA, Plaintiff has suffered actual damages, and continues to suffer damages, for which it is liable.

### b.  Fair Credit Reporting Act

51. Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs.

52. Unifund failed to conduct a reasonable investigation of Plaintiff's disputes it received from the consumer reporting agencies, and otherwise failed to comply with FCRA § 1681s-2(b).

53. Unifund has willfully, or alternatively, negligently violated FCRA § 1681s-(b) on multiple occasions.

54. As a result of Unifund's actions, Plaintiff has been damaged and continues to be damaged.

55. Trans Union failed to conduct a reasonable investigation of Plaintiff's disputes, and otherwise failed to comport with FCRA § 1681i.

56. Trans Union has continually added, stored, maintained and disseminated personal and credit information, in consumer reports it prepared and issued, about Plaintiff which was inaccurate, false, erroneous and misleading despite notice from Plaintiff that such information was inaccurate.

1    57.   Trans Union has willfully, or alternatively, negligently, violated FCRA §1681i.
2    58.   As a direct result and proximate cause of Trans Union's continued reporting of
3          erroneous and adverse information on Plaintiff's credit reports, Plaintiff has
4          suffered and continues to suffer damages.
5    59.   Pursuant to FCRA § 1681*o*, any person who is negligent in failing to comply with
6          any requirement imposed under the FCRA with respect to any consumer is liable
7          to that consumer in an amount equal to the sum of (1) any actual damages
8          sustained by the consumer as a result of the failure and (2) in the case of any
9          successful action to enforce any liability under 15 U.S.C. § 1681*o*, the costs of the
10         action together with reasonable attorneys' fees.
11   60.   As a result of Defendants' negligent failure to comply with the FCRA,
12         Defendants are liable to Plaintiff in an amount equal to the sum of (1) any actual
13         damages sustained by Plaintiff as a result of said failure and (2) the costs of this
14         action together with reasonable attorneys' fees.
15   61.   Pursuant to 15 U.S.C. § 1681n, any person who willfully fails to comply with any
16         requirement imposed under the FCRA with respect to any consumer is liable to
17         that consumer in an amount equal to the sum of (1) any actual damages sustained
18         by the consumer as a result of the failure or damages or not less than $100.00 and
19         not more than $1,000.00; (2) such amount of punitive damages as the court may
20         allow; and (3) in the case of any successful action to enforce any liability under 15
21         U.S.C. § 1681n, the costs of the action together with reasonable attorneys' fees.
22   62.   As a result of Defendants' willful failure to comply with the FCRA, Defendants
23         are liable to Plaintiff in an amount equal to the sum of (1) any actual damages
24         sustained by Plaintiff as a result of the failure or damages of not less than $100.00
25         and not more than $1,000.00 for each such violation; (2) such amount of punitive

damages as the court may allow; and (3) the costs of this action together with reasonable attorneys' fees.

## VIII.  DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

## IX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered against Defendants for:

a) Statutory damages of $1,000 pursuant to FDCPA § 1692k;

b) Actual damages for the FDCPA violations in an amount to be determined at trial;

c) Actual damages under the FCRA, or in the alternative, statutory damages of not less than $100 and not more than $1,000 per violation pursuant to FCRA § 1681n;

d) Punitive damages pursuant to FCRA § 1681n;

e) Costs and reasonable attorney's fees pursuant to §1692k and §§ 1681n and/or *o*; and

f) Such other relief as may be just and proper.

DATED  February 3, 2009  .

       s/ Floyd W. Bybee
Floyd W. Bybee, #012651
**LAW OFFICE OF**
**FLOYD W. BYBEE, PLLC**
4445 E. Holmes Ave., Suite 107
Mesa, AZ 85206-3398
Office:  (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiff